**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENNIFER LYNN LAWRENCE,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **DOAR, INC.,** | : |
| | : |
| **Defendant.** | : |

Civil Action No.: 2:21-cv-03269

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL
<u>JURISDICTION, IMPROPER VENUE, AND FAILURE TO STATE A CLAIM</u>**

BALLARD SPAHR LLP

Elizabeth Seidlin-Bernstein
seidline@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Counsel for Defendant DOAR, Inc.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 1

    A.    The Parties and their Roles in the Second Impeachment Trial ............................. 1

    B.    The Complaint ....................................................................................... 4

ARGUMENT ........................................................................................................ 5

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER DOAR ........................... 5

    A.    Plaintiff Cannot Establish General Jurisdiction Over DOAR ............................. 6

    B.    Plaintiff Cannot Establish Specific Jurisdiction Over DOAR ............................. 7

    C.    Jurisdictional Discovery Would Be Futile .................................................... 10

II.    THIS DISTRICT IS NOT A PROPER VENUE FOR THIS LAWSUIT ...................... 12

III.    DOAR'S COMMUNICATION IN CONNECTION WITH THE SECOND
IMPEACHMENT TRIAL IS IMMUNE FROM LIABILITY ......................................... 13

    A.    DOAR's Communication Is Immune Under the Speech or Debate Clause. ........ 13

    B.    DOAR's Communication Is Also Immune Under the
Absolute Litigation Privilege ..................................................................... 16

CONCLUSION .................................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*Aardvark Event Logistics, Inc. v. Bobcar Media LLC*,
  2017 U.S. Dist. LEXIS 1281 (E.D. Pa. Jan. 5, 2017) ............................................................12

*Am. Trade Servs. v. Tele-E-Star Comm'cn Sys.*,
  1998 U.S. Dist. LEXIS 18917 (E.D. Pa. Nov. 25, 1998) ........................................................13

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*,
  697 F. App'x 119 (3d Cir. 2017) ...........................................................................................10

*BNSF Ry. v. Tyrrell*,
  137 S. Ct. 1549 (2017) .............................................................................................................7

*Bockman v. First Am. Mktg. Corp.*,
  459 F. App'x 157 (3d Cir. 2012) ................................................................................1, 12, 13

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) .....................................................................................................5, 6, 7

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...................................................................................................3

*Chavez v. Dole Food Co.*,
  836 F.3d 205 (3d Cir. 2016) .....................................................................................................7

*City of Phila. v. Sessions*,
  2018 U.S. Dist. LEXIS 69082 (E.D. Pa. Apr. 4, 2018) ............................................................2

*Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*,
  213 P.3d 496 (Nev. 2009) ..................................................................................................16, 18

*D'Annunzio v. Ayken, Inc.*,
  876 F. Supp. 2d 211 (E.D.N.Y. 2012) ....................................................................................16

*D'Onofrio v. Mattino*,
  430 F. Supp. 2d 431 (E.D. Pa. 2006) ........................................................................................9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .........................................................................................................5, 6, 7

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
  948 F.3d 124 (3d Cir. 2020) ...................................................................................................10

*Doe v. McMillan*,
  412 U.S. 306 (1973) .........................................................................................................15, 16

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) ...................................................................................................14

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) .......................................................................................11

*Fatouros v. Lambrakis*,
    627 F. App'x 84 (3d Cir. 2015) ....................................................................................9

*Fink v. Oshins*,
    49 P.3d 640 (Nev. 2002) .......................................................................................16, 17

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ..................................................................................................8

*Gibbs v. Trans Union LLC*,
    2021 U.S. Dist. LEXIS 109263 (E.D. Pa. June 10, 2021) .........................................6

*Goldfarb v. Kalodimos*,
    2021 U.S. Dist. LEXIS 92176 (E.D. Pa. May 14, 2021) .......................................9, 10

*Grasshopper House, LLC v. Accelerated Recovery Ctrs.*,
    2009 U.S. Dist. LEXIS 95893 (D. Or. Oct. 15, 2009) ............................................8, 9

*Gravel v. United States*,
    408 U.S. 606 (1972) ........................................................................................14, 15, 16

*Hawkins v. Harris*,
    141 N.J. 207 (1995) .....................................................................................................18

*Henderson v. Keisling*,
    2010 U.S. Dist. LEXIS 4744 (E.D. Pa. Jan. 21, 2010) .............................................13

*Hepp v. Facebook*,
    2021 U.S. App. LEXIS 28830 (3d Cir. Sept. 23, 2021) ..............................................8

*Hepp v. Facebook*,
    476 F. Supp. 3d 81 (E.D. Pa. 2020) ..........................................................................11

*Jud. Watch, Inc. v. Schiff*,
    998 F.3d 989 (D.C. Cir. 2021) ...................................................................................14

*Kelly v. Maxum Specialty Ins. Grp.*,
    868 F.3d 274 (3d Cir. 2017) .......................................................................................13

*Kerrigan v. Otsuka Am. Pharm., Inc.*,
    560 F. App'x 162 (3d Cir. 2014) ................................................................................16

*Lasala v. Marfin Popular Bank Pub. Co.*,
   410 F. App'x 474 (3d Cir. 2011) .........................................................10

*Malik v. Cabot Oil & Gas Corp.*,
   710 F. App'x 561 (3d Cir. 2017) .......................................................6, 10

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007)................................................................5, 9

*Mass. Sch. of Law at Andover v. ABA*,
   107 F.3d 1026 (3d Cir. 1997)...........................................................10, 11

*Mellon Bank (E.) PSFS v. Farino*,
   960 F.2d 1217 (3d Cir. 1992)..................................................................5

*Muhammad v. Weis*,
   2009 U.S. Dist. LEXIS 72759 (E.D. Pa. Aug. 17, 2009)......................13

*N.A. Water Sys., LLC v. Allstates Worldcargo, Inc.*,
   2014 U.S. Dist. LEXIS 146658 (W.D. Pa. Aug. 12, 2014) ...................11

*Patterson by Patterson v. FBI*,
   893 F.2d 595 (3d Cir. 1990)....................................................................1

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)..................................................................3

*Petty v. Gen. Accident Fire & Life Assurance Corp.*,
   365 F.2d 419 (3d Cir. 1966)..................................................................18

*Porteous v. Baron*,
   729 F. Supp. 2d 158 (D.D.C. 2010) ................................................14, 15

*Post Acute Med., LLC v. Leblanc*,
   826 F. App'x 163 (3d Cir. 2020) ...........................................................12

*Price v. Schlee & Stillman, LLC*,
   2017 U.S. Dist. LEXIS 81245 (N.D. Ill. May 26, 2017) .........................8

*Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015) ................................................................15

*Rosenberg v. Metlife, Inc.*,
   866 N.E.2d 439 (N.Y. 2007)............................................................16, 17

*Ruffing v. Wipro Ltd.*,
   2021 U.S. Dist. LEXIS 59190 (E.D. Pa. Mar. 29, 2021).........................6

*Schanne v. Addis*,
    121 A.3d 942 (Pa. 2015) ...................................................................16

*Schmidt v. Skolas*,
    2013 U.S. Dist. LEXIS 113480 (E.D. Pa. Aug. 12, 2013) .....................12

*Sklover v. Sack*,
    102 A.D.3d 855 (N.Y. App. Div. 2013) ...............................................17

*Stepien v. Schaubert*,
    2010 U.S. Dist. LEXIS 45893 (W.D.N.Y. Feb. 23, 2010) ....................18

*United States v. Brewster*,
    408 U.S. 501 (1972) .............................................................................14

*Veliz v. Americorp Builders, Inc.*,
    2007 U.S. Dist. LEXIS 43560 (D.N.J. June 14, 2007) ..........................11

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................7, 8, 9, 11

*Walker v. Jones*,
    733 F.2d 923 (D.C. Cir. 1984) .............................................................15

*Williams v. Lazer*,
    2021 Nev. LEXIS 43 (Nev. Sept. 16, 2021) ...................................16, 17

*Youmans v. Smith*,
    47 N.E. 265 (N.Y. 1897) ......................................................................18

**Statutes**

42 Pa.C.S. § 5322 ...........................................................................................5

28 U.S.C. § 1391 ...........................................................................................12

28 U.S.C. § 1406 ...........................................................................................13

28 U.S.C. § 1631 ...........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................*passim*

Fed. R. Evid. 201 .............................................................................................2

U.S. Const. art. I...................................................................................1, 13, 14, 17

## PRELIMINARY STATEMENT

In this case, an individual who resides in Nevada has sued a trial consulting firm that is incorporated and headquartered in New York based on its work for the impeachment trial of former President Donald Trump, which took place in Washington, D.C. Neither the parties nor the underlying controversy have any connection to Pennsylvania. Consequently, this Court lacks personal jurisdiction over defendant and is not a proper venue for plaintiff's claims. The lawsuit should be dismissed pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure.

Even if the Court had jurisdiction or if venue in this District were proper, this action still should be dismissed pursuant to Rule 12(b)(6). Plaintiff cannot state any claim as a matter of well-established law, as the communication at issue is immune under the Speech or Debate Clause of the U.S. Constitution as well as the absolute litigation privilege.

## FACTUAL BACKGROUND

### A.     The Parties and their Roles in the Second Impeachment Trial

Defendant DOAR, Inc. is a trial consulting firm incorporated and headquartered in New York. Decl. of Paul Neale ("Neale Decl.") ¶¶ 3-4; Compl. ¶ 6.[1] DOAR has no offices in Pennsylvania, is not registered to do business in Pennsylvania, and has never filed corporate tax returns in Pennsylvania. Neale Decl. ¶¶ 4-7. DOAR has not had a client based in Pennsylvania since 2016, and that client accounted for less than 0.1 percent of DOAR's total revenues in 2016.

---

[1] The Court may consider declarations and other evidence in deciding whether it has jurisdiction over DOAR and whether venue in this District is proper. *See Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990) (a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings"); *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (in deciding a motion under Rule 12(b)(3), the court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits").

1

*Id.* ¶ 10.  In the past five years, DOAR has not advertised in Pennsylvania or conducted any of its

trial consulting work in Pennsylvania.  *Id.* ¶¶ 8-9.

Following the riot at the U.S. Capitol on January 6, 2021, DOAR was engaged to assist

the House Impeachment Managers in their visual presentation during the second impeachment

trial of former President Donald Trump, who was charged with inciting an insurrection.  Compl.

¶ 7; Neale Decl. ¶ 11; H. Res. 24, 117th Cong. (2021) (Article of Impeachment),

https://www.govinfo.gov/content/pkg/BILLS-117hres24rds/pdf/BILLS-117hres24rds.pdf.  While

the impeachment trial was held on the Senate floor in Washington, D.C., all of DOAR's work for

the trial was done in New York.  Neale Decl. ¶ 12.

Plaintiff Jennifer Lynn Lawrence is an individual who resides in Nevada.  Compl. ¶ 5.

On January 3, 2021, three days before the Capitol riot, Lawrence posted on Twitter:  "We have

been marching all around the country for you Mr President.  Now we will bring it to DC on Jan 6

and PROUDLY stand beside you!  Thank you for fighting for us @realDonaldTrump!"  Ex. 1,

https://twitter.com/jenlawrence21/status/1345600194826686464.

That same day, President Trump retweeted Lawrence's post from his official account,

@realDonaldTrump.[2]  In response, Lawrence posted another tweet, which read:  "BEST DAY

EVER!!!  Thank You @realdonaldtrump for the retweet!!  It has been an honor to stand up and

fight for you and our nation.  We will be standing strong on Jan 6th in DC with you!  We are

---

[2] President Trump's Twitter account, https://twitter.com/realDonaldTrump, was suspended
shortly after the Capitol riot.  *See* Ex. 2, https://blog.twitter.com/en_us/topics/company/
2020/suspension.  The Court may take judicial notice of this and other generally known facts
about the events of January 6, 2021, and the subsequent impeachment proceedings.  *See* Fed. R.
Evid. 201; *City of Phila. v. Sessions*, 2018 U.S. Dist. LEXIS 69082, at *4 (E.D. Pa. Apr. 4, 2018)
(taking judicial notice of public statements by President Trump and Attorney General Jeff
Sessions).

bringing the Calvary Mr President."  Ex. 3, https://twitter.com/JenLawrence21/status/
1345769967493541898.

  At the second impeachment trial, the House Impeachment Managers displayed this
Twitter exchange in their presentation against President Trump (the "Trial Exhibit").  Compl.
¶ 8; *see also* 167 Cong. Rec. S615, S623; Feb. 10, 2021 Senate Floor Proceedings at 1:32:45,
https://floor.senate.gov/MediaPlayer.php?view_id=2&clip_id=4036.  The Trial Exhibit was
prepared by DOAR as part of its trial consulting engagement, Compl. ¶ 8, and appeared as
follows:



Ex. 4.[3]

---

[3] The Court may consider the tweets and impeachment trial exhibit attached as Exhibits 1 and 3
because they are incorporated by reference into the Complaint and integral to Lawrence's claims.
*See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that
courts can consider materials on which plaintiff's claim is based); *Pension Benefit Guar. Corp. v.
White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining that courts can
consider documents that are referenced in complaint or integral to plaintiff's claims when ruling
on motion to dismiss).

In her Complaint, Lawrence does not dispute that the Trial Exhibit accurately reflected the text of her January 3, 2021 tweets. She alleges, however, that DOAR altered the tweets in the Trial Exhibit (1) "to contain a blue verification check mark," (2) "to have a different profile picture of" her, and (3) "to display the date of the tweet as January 3, 2020" rather than January 3, 2021. Compl. ¶ 8. According to Lawrence, those alleged modifications rendered the Trial Exhibit "false and defamatory on its face by imputing to Plaintiff images and statements which were not expressed by Plaintiff in the original un-altered tweet." *Id.* ¶ 11.

**B.** **The Complaint**

Lawrence filed this lawsuit on July 22, 2021, asserting claims against DOAR for defamation, false light invasion of privacy, and unauthorized use of image, name and/or likeness. *Id.* Counts I-III. She is represented by Bruce L. Castor, Jr., a Philadelphia-based lawyer who served as defense counsel to President Trump during the second impeachment trial. *See, e.g.*, Feb. 9, 2021 Senate Floor Proceedings at 2:03:15,

https://floor.senate.gov/MediaPlayer.php?view_id=&clip_id=4033&caption_id=20478411.

In her Complaint, Lawrence alleges that DOAR is subject to general personal jurisdiction in this Court "because [DOAR's] systematic and continuous contacts within the Commonwealth of Pennsylvania render [it] at home here." Compl. ¶ 2. She also alleges that DOAR is subject to specific personal jurisdiction in this Court "because [DOAR] conduct[s] business within the state and receive[s] revenue from conducting business with Pennsylvania residents." *Id.* ¶ 3. She further alleges that venue is proper in this District "in that [DOAR is] subject to specific personal jurisdiction as [it] engages in regular business with Pennsylvania residents and within the Eastern

District of Pennsylvania." *Id.* ¶ 4.[4]  Beyond these conclusory allegations, Lawrence pleads no

facts suggesting any connection between Pennsylvania and the parties or conduct at issue in this

lawsuit.

## ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER DOAR.

A district court is authorized to exercise personal jurisdiction in accordance with the law

of the state where it is located, in this case Pennsylvania.  *See Marten v. Godwin*, 499 F.3d 290,

296 (3d Cir. 2007).  Pennsylvania's long-arm statute, in turn, provides for jurisdiction over non-

residents to the "fullest extent allowed under the Constitution of the United States."  42 Pa.C.S.

§ 5322(b).  Accordingly, this Court may only exercise jurisdiction over DOAR if it has "certain

minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."  *Marten*, 499 F.3d at 296 (citations

omitted).  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the

plaintiff bears the burden of proving personal jurisdiction and must do so by "establishing with

reasonable particularity sufficient contacts between the defendant and the forum state."  *Mellon*

*Bank (E.) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

To meet her burden, Lawrence must come forward with facts demonstrating either

(1) general jurisdiction, meaning contacts "so 'continuous and systematic' as to render [DOAR]

essentially at home in" Pennsylvania, *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014), or

(2) specific jurisdiction, meaning an "affiliation between" Pennsylvania "and the underlying

---

[4] Although these allegations in the Complaint refer to "Defendants," plural, *see* Compl. ¶¶ 2-4,
DOAR is the only named defendant in this action.

controversy," *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).  She

cannot do either one.

A.    <u>Plaintiff Cannot Establish General Jurisdiction Over DOAR.</u>

Lawrence has pleaded no facts – nor could she – that would demonstrate DOAR is

"essentially at home in" Pennsylvania, as would be necessary to establish general jurisdiction "to

hear any and all claims against" DOAR in this Court.  *Daimler*, 571 U.S. at 127.  Indeed, other

than her bare allegation that DOAR's "systematic and continuous contacts with the

Commonwealth of Pennsylvania render [it] at home here," Compl. ¶ 2, Lawrence has not

pleaded *any* connection between DOAR and Pennsylvania.  That is plainly insufficient.  *See*

*Gibbs v. Trans Union LLC*, 2021 U.S. Dist. LEXIS 109263, at *4 (E.D. Pa. June 10, 2021) ("[A]

mere allegation that a defendant operates in a state does not render the defendant 'at home'

there."); *Ruffing v. Wipro Ltd.*, 2021 U.S. Dist. LEXIS 59190, at *4-5 (E.D. Pa. Mar. 29, 2021)

(to establish "a prima facie case of personal jurisdiction . . . the plaintiff must allege specific

facts rather than vague or conclusory assertions" (internal quotation marks and citation omitted)).

Even if Lawrence attempted to provide more specific facts regarding DOAR's contacts

with Pennsylvania, she could not possibly prove that DOAR is "essentially at home" here.

*Daimler*, 571 U.S. at 122.  Typically, the only states where a corporate defendant will be "at

home" are its place of incorporation and its principal place of business.  *Id.* at 137; *see also*

*Malik v. Cabot Oil & Gas Corp*., 710 F. App'x 561, 564 (3d Cir. 2017) ("[I]t is incredibly

difficult to establish general jurisdiction over a corporation in a forum other than the place of

incorporation or principal place of business." (internal quotation marks omitted)).  Both DOAR's

place of incorporation and its principal place of business are New York, not Pennsylvania.  Neale

Decl. ¶ 3-4.

In an "exceptional case," a corporation's activities in another state may be so substantial as to make it "at home" there as well. *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (giving example of a company based in the Philippines that temporarily moved its operations to Ohio during World War II).  But DOAR's contacts with Pennsylvania fall far short of that mark.  It has no presence here whatsoever.  DOAR has no offices here, is not registered to do business here, has never filed corporate tax returns here, and does not even advertise here.  Neale Decl. ¶¶ 4-9.  The last time it had a client based in Pennsylvania was in 2016, and the work for that client reflected less than 0.1 percent of the company's total revenues for that single year.  *Id.* ¶ 10.  DOAR has not done any trial consulting work from Pennsylvania for the past five years. *Id.* ¶¶ 8, 10.  Such sparse contacts are not nearly enough to allow DOAR to be "sued on any and all claims" in Pennsylvania.  *Daimler*, 571 U.S. at 137; *see also, e.g.*, *BNSF*, 137 S. Ct. at 1559 (Montana did not have general jurisdiction over railroad company with "over 2,000 miles of railroad track and more than 2,000 employees in Montana"); *Chavez v. Dole Food Co*., 836 F.3d 205, 223 (3d Cir. 2016) (no general jurisdiction in Delaware where "company is not incorporated there, does not maintain an office there, and does not supervise its business there").  This Court does not have general jurisdiction over DOAR.

### B.  Plaintiff Cannot Establish Specific Jurisdiction Over DOAR.

Lawrence's allegation that DOAR is subject to specific jurisdiction in this Court because it "conduct[s] business within the state and receive[s] revenue from conducting business with Pennsylvania residents," Compl. ¶ 3, is also insufficient.  As set forth above, DOAR's contacts in Pennsylvania are extremely limited, but even if they were more extensive, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  Specific jurisdiction exists only if there is "a connection between the forum and the specific claims at issue."  *Id.*  As the Supreme Court has instructed, "the

defendant's suit-related conduct must create a substantial connection with the forum State."
*Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("[T]here must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (internal quotation marks omitted)); *Hepp v. Facebook*, 2021 U.S. App. LEXIS 28830, at *5 (3d Cir. Sept. 23, 2021) (defendant's contacts with the forum "must give rise to – or relate to – plaintiff's claims").

There is *no* connection between Pennsylvania and the specific claims at issue.  All of Lawrence's claims arise from the House Impeachment Managers' use of the Trial Exhibit during the second impeachment trial, which took place on the Senate floor in Washington, D.C.  *See generally* Compl.  The Trial Exhibit depicted tweets posted by Lawrence, a resident of Nevada, and was prepared by DOAR from its headquarters in New York.  Compl. ¶ 5; Neale Decl. ¶ 12. The Complaint contains no factual allegations connecting any of the underlying events to Pennsylvania.  To the contrary, the only apparent connection between this lawsuit and Pennsylvania is Lawrence's choice of counsel, who is based in Philadelphia.  *See* Compl. at 11. That attenuated connection to the forum has no bearing on whether this Court has specific jurisdiction over DOAR.  *See Walden*, 571 U.S. at 284 (explaining that "the relationship must arise out of contacts that the defendant himself creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State" (internal quotation marks omitted)); *Price v. Schlee & Stillman, LLC*, 2017 U.S. Dist. LEXIS 81245, at *7 (N.D. Ill. May 26, 2017) (holding that location of counsel is "entirely irrelevant" to specific jurisdiction analysis); *Grasshopper House, LLC v. Accelerated Recovery Ctrs.*, 2009 U.S. Dist. LEXIS 95893, at *8

(D. Or. Oct. 15, 2009) (dismissing case for lack of personal jurisdiction where "it appears that the only connection this case has with the State of Oregon is the location of plaintiffs' counsel").

Lawrence pleads in the Complaint that she suffered harm to her reputation "worldwide" as a result of DOAR's alleged conduct.  Compl. ¶ 13.  And, in correspondence her attorney filed with the Court on September 8, 2021, she further contended that DOAR "spread falsehoods about" her in Pennsylvania and that her "reputation was damaged" in Pennsylvania.  Dkt. No. 5. Even accepting these unpleaded facts as true, they would not suffice to establish specific jurisdiction over DOAR.  The Supreme Court has made clear in recent years that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way."  *Walden*, 571 U.S. at 290. It does not.  Moreover, even if Lawrence's theory were viable under that precedent, she would need to show both that she "felt the brunt of the harm in" Pennsylvania and that DOAR "expressly aimed" its conduct at Pennsylvania.  *Marten*, 499 F.3d at 297; *see also D'Onofrio v. Mattino*, 430 F. Supp. 2d 431, 443 (E.D. Pa. 2006) ("[T]he mere fact that Defendants published their articles nationwide and that some ended up in Pennsylvania is not sufficient to confer jurisdiction over Defendants."); *Fatouros v. Lambrakis*, 627 F. App'x 84, 87-88 (3d Cir. 2015) (broadcasts and publications that could be accessed over the internet in New Jersey were insufficient to establish specific jurisdiction in that state absent evidence that they targeted New Jersey.  Given that Lawrence is a resident of Nevada, there is no factual basis to conclude that she suffered greater harm in Pennsylvania than in her home state, or that DOAR "deliberate[ly] target[ed]" Pennsylvania in preparing the Trial Exhibit in New York for use in Washington, D.C. *Marten*, 499 F.3d at 298; *Goldfarb v. Kalodimos*, 2021 U.S. Dist. LEXIS 92176, at *29 (E.D. Pa.

May 14, 2021) ("Plaintiff felt the brunt of the alleged harms where he resides and works, that is, in Pennsylvania").

Accordingly, this Court also has no specific jurisdiction over DOAR, and this action should be dismissed for lack of personal jurisdiction.[5]

## C.    <u>Jurisdictional Discovery Would Be Futile.</u>

Although Lawrence served written discovery on DOAR on September 8, 2021, *see* Ex. 5, she has yet to ask this Court for leave to take jurisdictional discovery.  Because jurisdictional discovery would be futile, any such request should be denied.

As the Third Circuit has explained, "jurisdictional discovery is not available merely because the plaintiff requests it."  *Malik*, 710 F. App'x at 565.  To justify jurisdictional discovery, the plaintiff must show that the claim of jurisdiction is not "clearly frivolous" by pointing to "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" between the defendant and the forum.  *Lasala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011).  If a plaintiff cannot meet this standard or if pursuing jurisdictional discovery would be "futile," the request should be denied.  *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017).

Lawrence's conclusory allegations that DOAR has "systematic and continuous contacts" with Pennsylvania, "conduct[s] business within" Pennsylvania, and "receive[s] revenue from conducting business with Pennsylvania residents," Compl. ¶¶ 2-3, are clearly frivolous.  Indeed, as the Third Circuit and numerous courts in this Circuit have held, "a mere unsupported

---

[5] Although the Court has "broad discretion" to transfer a case if it is in the "interests of justice," that is unnecessary here, where Lawrence could refile her lawsuit in a proper forum.  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020) (citing 28 U.S.C. § 1631) ("If a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer.").

allegation that the defendant 'transacts business' in an area is 'clearly frivolous'." *Mass. Sch. of Law at Andover v. ABA*, 107 F.3d 1026, 1042 (3d Cir. 1997); *see also, e.g.*, *Hepp v. Facebook*, 476 F. Supp. 3d 81, 90 (E.D. Pa. 2020) (allegation that defendant "conducts business in the Commonwealth of Pennsylvania amounts to nothing more than a bare allegation that cannot support a request to conduct jurisdictional discovery"), *aff'd in relevant part*, 2021 U.S. App. LEXIS 28830, at *5-7; *N.A. Water Sys., LLC v. Allstates Worldcargo, Inc.*, 2014 U.S. Dist. LEXIS 146658, at *18 (W.D. Pa. Aug. 12, 2014) (allegation that defendant "was at all times doing business[] within the Commonwealth of Pennsylvania" was "merely conclusory and insufficient to allow jurisdictional discovery"); *Veliz v. Americorp Builders, Inc.*, 2007 U.S. Dist. LEXIS 43560, at *12 (D.N.J. June 14, 2007) ("unsupported allegation" that defendant "does continuous and substantial business" in the forum "is emblematic of the clearly frivolous standard").

In addition, jurisdictional discovery would be futile. As is apparent from the Complaint and from the declaration filed in support of this motion, DOAR has no connection to Pennsylvania at all, and Lawrence's claims do not arise from any action DOAR took in this state, let alone any action that has a "substantial connection" to Pennsylvania. *Walden*, 571 U.S. at 284. There are no facts she could uncover that would change the analysis.

Furthermore, the 22 jurisdictional discovery requests prematurely served by Lawrence, seeking information about DOAR's business activities around the United States dating back to 1989 and "all communications between the plaintiff and defendant," Ex. 5, are precisely the type of "fishing expedition" that should not be permitted "based only upon bare allegations." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). Therefore, even if Lawrence properly requests to take jurisdictional discovery, her request should

be denied.  *See Schmidt v. Skolas*, 2013 U.S. Dist. LEXIS 113480, at \*18 (E.D. Pa. Aug. 12,

2013) (denying jurisdictional discovery request that was revealed "to be nothing more than a

fishing expedition"), *rev'd in part on other grounds*, 770 F.3d 241 (3d Cir. 2014); *Aardvark

Event Logistics, Inc. v. Bobcar Media LLC*, 2017 U.S. Dist. LEXIS 1281, at \*20 (E.D. Pa. Jan. 5,

2017) (declining to "allow discovery simply on the optimistic hope that plaintiff will uncover

some conduct directed to Pennsylvania").

## II.      THIS DISTRICT IS NOT A PROPER VENUE FOR THIS LAWSUIT.

For much the same reasons that this Court lacks personal jurisdiction over DOAR, venue

in this District is improper.  The federal venue statute provides, in relevant part, that a civil

action may be brought only in a district where (1) the defendant resides, or (2) "a substantial part

of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)-(2); *Post

Acute Med., LLC v. Leblanc*, 826 F. App'x 163, 165 (3d Cir. 2020).   None of those criteria is

met here.

As is clear from the face of the Complaint and from the additional evidence submitted by

DOAR in support of this motion, DOAR does not reside in this District (or anywhere in

Pennsylvania, for that matter), and none of the alleged conduct giving rise to this lawsuit

occurred in this District.  Accordingly, even if the Court had jurisdiction over DOAR (which it

does not), the Complaint should be dismissed for improper venue.  *See id.* at 166 (affirming

dismissal of complaint where "the complaint itself provide[s] ample support for" finding of

improper venue); *Bockman*, 459 F. App'x at 161 (affirming dismissal of complaint where

defendants offered evidence that venue was improper and plaintiffs "failed to rebut that evidence").[6]

### III.   DOAR'S COMMUNICATION IN CONNECTION WITH THE SECOND IMPEACHMENT TRIAL IS IMMUNE FROM LIABILITY.

To the extent this Court determines that it has personal jurisdiction over DOAR and that venue in this District is proper, the Complaint should nonetheless be dismissed pursuant to Rule 12(b)(6).[7]  *See Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 289 (3d Cir. 2017) ("courts must consider their jurisdiction before they reach the merits of a case").  DOAR's communication through the Trial Exhibit is immune from each of Lawrence's claims under the Speech or Debate Clause of the U.S. Constitution as well the absolute litigation privilege.

### A.   DOAR's Communication Is Immune Under the Speech or Debate Clause.

The Speech or Debate Clause provides that "any Speech or Debate in either House," Senators and Representatives "shall not be questioned in any other Place."  U.S. Const. art. I, § 6,

---

[6] Transferring the case pursuant to 28 U.S.C. § 1406(a) is not "in the interest of justice" because this lawsuit is without merit and was not filed in this forum in good faith, and Lawrence would not be unfairly prejudiced by its dismissal.  *See Muhammad v. Weis*, 2009 U.S. Dist. LEXIS 72759, at *10 (E.D. Pa. Aug. 17, 2009) ("it is not in the interest of justice to transfer a case that is frivolous" or where it "would be futile because the case would be dismissed even after transfer") (internal quotation marks omitted); *Henderson v. Keisling*, 2010 U.S. Dist. LEXIS 4744, at *4 (E.D. Pa. Jan. 21, 2010) ("A transfer is not in the interest of justice when, for example, the plaintiff (1) commenced the action in the wrong district for some improper purpose, (2) intended to harass the defendant by filing in a distant venue, or (3) engaged in blatant forum-shopping."); *Am. Trade Servs. v. Tele-E-Star Comm'cn Sys.*, 1998 U.S. Dist. LEXIS 18917, at *8 (E.D. Pa. Nov. 25, 1998) (dismissing case for improper venue "[b]ecause no party has argued that it will be unfairly prejudiced if this case is dismissed and not transferred, and, more importantly, because the record is unclear as to where this case should and can be transferred").

[7] On September 27, 2021, the Court entered an order staying the deadlines for DOAR to file a Rule 12(b)(6) motion and a motion under any state's anti-SLAPP law until after a ruling on DOAR's motion to dismiss for lack of personal jurisdiction and improper venue.  Dkt. No. 7. DOAR reserves the right to supplement its arguments under Rule 12(b)(6) and file an anti-SLAPP motion in the event that the Court holds that it can exercise jurisdiction over DOAR and that venue is proper in this District.

cl. 1.  This language provides absolute immunity from civil and criminal actions.  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501-02 (1975).  "Without exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes," which are "to insure that the legislative function the Constitution allocates to Congress may be performed independently" and to "reinforc[e] the separation of powers."  *Id.* at 502; *see also United States v. Brewster*, 408 U.S. 501, 524 (1972) ("[T]he purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process.").

Consistent with these purposes, the Supreme Court has held that the Speech or Debate Clause applies not only to "literal speech or debate," but also to all other matters that "fall within the 'legitimate legislative sphere.'"  *Eastland*, 421 U.S. at 503.  This includes any activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."  *Gravel v. United States*, 408 U.S. 606, 625 (1972).

An impeachment trial is "a matter that 'the Constitution places within the jurisdiction of either House,'" *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (quoting *Gravel*, 408 U.S. at 625), as the Constitution specifically provides the House "the sole Power of Impeachment," U.S. Const. art. I, § 2, cl. 5, and the Senate "the sole Power to try all Impeachments," *id.*, § 3, cl. 6.  The work of the House Impeachment Managers during the second impeachment trial of President Trump was therefore protected by the Speech or Debate Clause.  *See Jud. Watch*, 998 F.3d at 992 (holding that activities related to House impeachment inquiry were "protected by the Speech or Debate Clause"); *Porteous v. Baron*, 729 F. Supp. 2d

14

158, 165 (D.D.C. 2010) ("[T]he consideration and use of . . . testimony by Members of Congress in the course of a Senate impeachment trial falls squarely within its legislative sphere."); *see also Rangel v. Boehner*, 785 F.3d 19, 23-24 (D.C. Cir. 2015) (holding that "a congressional disciplinary proceeding . . . fall[s] comfortably within the scope of the Speech or Debate Clause").

Crucially, the immunity provided by the Speech or Debate Clause extends beyond Senators and Representatives themselves; it also protects individuals who assist Members of Congress in performing their constitutional duties. *See Gravel*, 408 U.S. at 618. The Supreme Court has held that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Id.*; *see also Rangel*, 785 F.3d at 25 (holding that Speech or Debate Clause immunity applies to committee staffers). Thus, even non-governmental third parties who take part in protected legislative action are covered by the immunity. *See Doe v. McMillan*, 412 U.S. 306, 312 (1973) (recognizing immunity of consultant and investigator who worked on report issued by House subcommittee). As then-Judge Ruth Bader Ginsberg explained when sitting on the D.C. Circuit, the "key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor." *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984).

Here, the Speech or Debate Clause precludes any imposition of liability on DOAR for its assistance to the House Impeachment Managers in prosecuting the second impeachment trial. All of Lawrence's claims arise from DOAR's role in preparing the Trial Exhibit, which the House Impeachment Managers then displayed to the Senators and the public during the trial. Compl. ¶¶ 7-8, 13. The preparation of the Trial Exhibit is indisputably "a protected legislative act" and would have been protected "if performed by" the House Impeachment Managers

themselves.  *Gravel*, 408 U.S. at 618.  Thus, DOAR is immune under the Speech or Debate

Clause, and Lawrence's claims against it are barred by this fundamental constitutional law.  *See*

*id.*; *Doe*, 412 U.S. at 312.

      **B.**      **DOAR's Communication Is Also Immune**
              **Under the Absolute Litigation Privilege.**

      Both New York and Nevada recognize an absolute privilege that protects statements

made in the context of judicial or quasi-judicial proceedings.  *See Rosenberg v. Metlife, Inc.*, 866

N.E.2d 439, 443 (N.Y. 2007) ("statements made during the course of a judicial or quasi-judicial

proceeding are clearly protected by an absolute privilege as long as such statements are material

and pertinent to the questions involved"); *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002)

("[C]ommunications uttered or published in the course of judicial proceedings are absolutely

privileged."); *Williams v. Lazer*, 2021 Nev. LEXIS 43, at *14  (Nev. Sept. 16, 2021) ("the

absolute litigation privilege extends to quasi-judicial proceedings").[8]  The privilege "is

predicated upon the public interest in the freedom of participants in litigation to speak with that

free and open mind which the administration of justice demands."  *D'Annunzio v. Ayken, Inc.*,

876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012) (internal quotation marks omitted); *see also Clark*

*Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502 (Nev. 2009) ("The purpose of

the absolute privilege is to afford all persons freedom to access the courts and freedom from

liability for defamation where civil or criminal proceedings are seriously considered.").  Because

---

[8] Since there is no conflict between the law of New York and Nevada (the domiciles of the
parties) with respect to the absolute litigation privilege, the two states' law on this issue may be
cited "interchangeably."  *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 167 (3d Cir.
2014).  Although Pennsylvania law does not apply because it has no interest in this litigation,
Pennsylvania also recognizes the same absolute privilege.  *See Schanne v. Addis*, 121 A.3d 942,
947 (Pa. 2015) (Pennsylvania "recognizes a judicial privilege providing immunity for
communications which are made in the regular course of judicial proceedings and are material to
the relief sought").

the privilege is absolute, "it precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." *Fink*, 49 P.3d at 643; *see also Sklover v. Sack*, 102 A.D.3d 855, 856 (N.Y. App. Div. 2013) (privilege protects statements "even if made with malice or bad faith").

The Nevada Supreme Court has explained that a proceeding is quasi-judicial "if it (1) provide[s] the opportunity to present and rebut evidence and witness testimony, (2) require[s] that such evidence and testimony be presented upon oath or affirmation, and (3) allow[s] opposing parties to cross-examine, impeach, or otherwise confront a witness." *Williams*, 2021 Nev. LEXIS 43, at *14. Similarly, New York courts have characterized proceedings as quasi-judicial if they serve a "public function" and involve the "investigation and adjudication of suspected violations." *Rosenberg*, 866 N.E.2d at 442, 444.

The second impeachment trial of President Trump was a quasi-judicial proceeding within the meaning of the absolute litigation privilege. Indeed, Lawrence's lawyer in this case was one of the lawyers representing President Trump in that trial. As provided for by the Constitution, that trial was an adjudicative process conducted by the Senate following impeachment by the House of Representatives. *See* U.S. Const. art. I, § 3, cl. 6. At the second impeachment trial of President Trump, the House Impeachment Managers submitted an extensive evidentiary record, which President Trump's lawyers had the opportunity to rebut, and the two sides made elaborate opening statements and closing arguments to the Senators sitting as jurors. *See generally* House Doc. 117-9 – Impeachment of President Donald John Trump, https://www.govinfo.gov/collection/impeachment-related-publications; 167 Cong. Rec. S589; 167 Cong. Rec. S717. In short, the second impeachment trial had all of the hallmarks of a quasi-judicial proceeding, and therefore the absolute litigation privilege attaches to its participants.

17

DOAR, in its role assisting the House Impeachment Managers present their case, is fully protected by the privilege.  The absolute litigation privilege encompasses not only judges, lawyers, and witnesses, but also other participants in judicial and quasi-judicial proceedings.  *See Clark Cty. Sch. Dist.*, 213 P.3d at 503 (privilege applies "to instances where a nonlawyer asserts an alleged defamatory communication . . . during a judicial proceeding"); *Youmans v. Smith*, 47 N.E. 265, 267 (N.Y. 1897) (privilege protects not only a lawyer, but also "his agents and employees in whatever they did at his request that he could have lawfully done himself"); *see also, e.g.*, *Petty v. Gen. Accident Fire & Life Assurance Corp.*, 365 F.2d 419, 421 (3d Cir. 1966) (applying privilege to insurance carriers because "the immunity which attends judicial proceedings protects both counsel and other representatives who are employed to assist a party in the course of litigation"); *Hawkins v. Harris*, 141 N.J. 207, 221 (1995) (applying privilege to statements of private investigators made during pretrial discovery).  Just as the House Impeachment Managers themselves are immune from liability for their statements during the second impeachment trial, so too is DOAR.[9]

\*       \*       \*

Because DOAR's communications in the context of the second impeachment trial are immune from liability under both the Speech or Debate Clause and the absolute litigation privilege, Lawrence cannot state a claim arising from those communications as a matter of law, and her Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

---

[9] To the extent that the House Impeachment Managers were acting in their lawmaking capacity during the second impeachment trial, DOAR's communication is also protected by the absolute legislative privilege.  *See Stepien v. Schaubert*, 2010 U.S. Dist. LEXIS 45893, at \*22 (W.D.N.Y. Feb. 23, 2010) ("[L]egislative immunity shields an official from liability if the act in question was undertaken in the sphere of legitimate legislative activity." (internal quotation marks omitted)).

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed pursuant to Rules 12(b)(2),

12(b)(3), and/or 12(b)(6).

Dated: September 28, 2021          Respectfully submitted,

BALLARD SPAHR LLP

By:    */s/ Elizabeth Seidlin-Bernstein*
       Elizabeth Seidlin-Bernstein
       seidline@ballardspahr.com
       1735 Market Street, 51st Floor
       Philadelphia, PA 19103-7599
       Telephone: 215.665.8500
       Facsimile: 215.864.8999

*Counsel for Defendant DOAR, Inc.*