IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER LYNN LAWRENCE, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 2:21-cv-03269 |
| v. : | |
| : | |
| DOAR, INC., : | |
| : | |
| Defendant. : | |
| : | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
COMPLAINT FOR LACK OF PERSONAL JURISDICTION,
IMPROPER VENUE, AND FAILURE TO STATE A CLAIM**

The response filed by plaintiff Jennifer Lynn Lawrence ("Opposition" or "Opp.," Dkt. 9) in opposition to defendant DOAR, Inc.'s motion to dismiss (Dkt. 8) confirms that this lawsuit has no connection whatsoever to Pennsylvania. It should be dismissed for lack of personal jurisdiction and improper venue. On the merits, Lawrence's argument underscores why DOAR is immune from suit under the Constitution's Speech or Debate Clause and the absolute privilege for quasi-judicial proceedings. Indeed, her Opposition – filed by one of the lawyers who represented former President Donald Trump during the second impeachment trial – claims this lawsuit will "call[] into disrepute the entire case presented by the House Managers." Opp. at 8. That kind of claim is precisely why the Constitution and common law bar lawsuits against those who assist Members of Congress in performing their legislative duties and participate in quasi-judicial proceedings.

**I.   PLAINTIFF HAS FAILED TO PRESENT ANY FACTS THAT
      WOULD ESTABLISH PERSONAL JURISDICTION OVER DOAR.**

Lawrence has utterly failed to meet her burden of demonstrating that this Court has general or specific jurisdiction over DOAR. Neither the conclusory allegations in her

Complaint, nor the vague and unsupported assertions in her Opposition, allow the Court to exercise jurisdiction. *See Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (in opposing a Rule 12(b)(2) motion, "plaintiff must respond with actual proofs, not mere allegations"); *Chant Eng'g Co. v. Cumberland Sales Co.*, 2021 U.S. Dist. LEXIS 39511, at *4 (E.D. Pa. Mar. 3, 2021) ("Once the plaintiff's allegations are contradicted by an opposing affidavit . . . [the plaintiff] must present similar evidence in support of personal jurisdiction.").

**General Jurisdiction:**  Lawrence does not address the Supreme Court precedent permitting the exercise of general jurisdiction over a corporate entity only where its contacts "are so continuous and systematic as to render [it] essentially at home" – typically its state of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Nor does Lawrence even attempt to argue that DOAR is "essentially at home" here; she simply asserts that, "[b]y its own admission, Defendant conducts business throughout the United States and has conducted business in Pennsylvania." Opp. at 3. The Supreme Court has made clear, however, that doing business in a state, without more, does not give rise to general jurisdiction. *See BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) ("in-state business . . . does not suffice to permit the assertion of general jurisdiction"); *Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *see also Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) (rejecting plaintiff's argument for general jurisdiction over a "national corporation" based on its operations in a state where it was "neither incorporated in nor ha[d] its principal place of business").

**Specific Jurisdiction:**  Lawrence similarly does not address the law governing specific jurisdiction, which focuses on "whether the *defendant's* actions connect [it] to the forum." *Walden v. Fiore*, 571 U.S. 277, 289 (2014). Instead, she argues only the Trial Exhibit was

published by *others* nationwide. See Opp. at 4 ("This manufactured tweet appeared on the pages of *The New York Times*, and was televised nationally and internationally . . . ."); Compl. ¶ 12. It remains undisputed that DOAR's conduct has no connection to Pennsylvania: DOAR prepared the Trial Exhibit in New York, depicting tweets by a resident of Nevada, for use by the House Impeachment Managers in Washington, D.C. Neale Decl. ¶ 12; Compl. ¶ 5.

Even if DOAR had itself published the Trial Exhibit throughout the country, to establish specific jurisdiction, Lawrence would need to show that she "felt the brunt of the harm in" Pennsylvania and that DOAR "expressly aimed" its conduct here. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007); Br. at 9. She has not made either showing. *See also ALS Scan v. Digital Serv. Consultants*, 293 F.3d 707, 712 (4th Cir. 2002) (rejecting notion "that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed"); *Marfione v. Kai U.S.A.*, 2018 U.S. Dist. LEXIS 51066, at *11 (W.D. Pa. Mar. 27, 2018) (finding no specific jurisdiction over claims based on social media post accessible in Pennsylvania where plaintiffs had "not pled that they felt the brunt of the resulting harm in Pennsylvania, or that [defendant] expressly aimed his tortious conduct at Pennsylvania").

**Jurisdictional Discovery:** Lawrence's request for jurisdictional discovery should be denied because her claim of jurisdiction is "clearly frivolous." *Lasala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478-79 (3d Cir. 2011). Even if Lawrence were correct – despite all evidence to the contrary – that DOAR "has done extensive business in Pennsylvania and has sought and continues to seek clients located in Pennsylvania," Opp. at 5, that would not establish general or specific jurisdiction over DOAR. Accordingly, jurisdictional discovery would be "futile." *Barth v. Walt Disney Parks & Resorts U.S.*, 697 F. App'x 119, 120 (3d Cir. 2017); *see*

3

*also Lasala*, 410 F. App'x at 478-79 (affirming denial of request for jurisdictional discovery where plaintiffs failed to "present[] factual allegations that suggest[ed] with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state").

II. **PLAINTIFF HAS FAILED TO PRESENT ANY FACTS ESTABLISHING THAT THIS DISTRICT IS A PROPER VENUE FOR THIS LAWSUIT.**

Lawrence asserts that venue is proper in this District because "a substantial part of the events or omissions giving rise to the claim occurred" here, but again the only fact she offers is that, during the television broadcast of the impeachment proceedings, the Trial Exhibit was "viewed by individuals residing in every U.S. State, including Pennsylvania." Opp. at 6 (citing 28 U.S.C. § 1391(b)(2)). Lawrence's argument ignores well-established law, which holds that nationwide publication of an allegedly defamatory statement does not make venue proper in every district in the country. *See, e.g.*, *Van Deelen v. Bloomberg*, 2021 U.S. Dist. LEXIS 4506, at *10-12 (S.D. Ala. Jan. 8, 2021) (venue was improper where claims had no connection to district other than publication of allegedly defamatory statements online); *Corsi v. Stone*, 2020 U.S. Dist. LEXIS 34852, at *4-7 (D.D.C. Mar. 1, 2020) (same).

III. **DOAR IS IMMUNE FROM LIABILITY UNDER THE SPEECH OR DEBATE CLAUSE AND THE ABSOLUTE LITIGATION PRIVILEGE.**

Lawrence's claims also fail on the merits, as DOAR is insulated from liability under the Speech or Debate Clause of the Constitution and the absolute litigation privilege. Br. at 13-18.

**Speech or Debate Clause:** Lawrence concedes, as she must, that impeachment-related activities are "legislative act[s] protected by the Speech or Debate Clause." *Judicial Watch v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021); *see also* Br. at 14-15 (citing cases); Opp. at 7-8. She nonetheless argues that this immunity does not extend to DOAR because (1) Lawrence is not a member of the Executive Branch, and (2) DOAR is not a Member of Congress or an aide or

4

assistant to a Member of Congress.  Opp. at 7-8.  Neither of her arguments finds any support in the case law.

*First*, it is irrelevant that Lawrence is not a member of the Executive Branch, as "the Speech or Debate Clause is an absolute bar to interference" with legislative functions regardless of who is interfering.  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).  The Supreme Court has recognized that "a private civil action" can be just as disruptive as an action "instituted by the Executive Branch," and that the Speech or Debate Clause can apply in either scenario.  *Id.* (holding that Speech or Debate Clause prevented nonprofit membership corporation from challenging subpoena issued by Senate subcommittee); *see also Doe v. McMillan*, 412 U.S. 306, 312 (1973) (Speech or Debate Clause applied in civil suit brought by parents and children whose private information was included in House Committee report).

*Second*, Lawrence is mistaken in asserting that the Speech or Debate clause "only protects Members of Congress and their aides or assistants."  Opp. at 8 (citing *Gravel v. United States*, 408 U.S. 606, 616-17 (1972)).  In *Doe v. McMillan*, the Supreme Court recognized that a consultant and an investigator – in addition to Members of Congress and their staff – were protected by the Speech or Debate Clause for their contributions to a Committee report that was the subject of civil litigation.  412 U.S. at 312.  The Court has rejected "a literalistic approach" in determining who can invoke the immunity, instead interpreting the Clause broadly "to implement its fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator."  *Gravel*, 408 U.S. at 618.  The Speech or Debate Clause protects anyone who engages in conduct that "would be a protected legislative act if performed by the Member himself."  *Id.*; *see also Doe*, 412 U.S. at 312.

Here, Lawrence does not dispute that the conduct in question – preparing an exhibit for use in impeachment proceedings – would be protected if it had been performed by a Member of Congress.[1] In fact, Lawrence acknowledges that DOAR's conduct is inextricably bound up with the House Impeachment Managers' performance of their constitutionally assigned duties, arguing that the alleged discrepancies in the Trial Exhibit "call[] into disrepute the entire case presented by the House Managers" and render their "evidentiary presentation . . . suspect as to accuracy." Opp. at 8. Thus, through this lawsuit, Lawrence asks the Court to wade into "legitimate legislative activity," which is precisely what the Speech or Debate Clause is meant to insulate. *Eastland*, 421 U.S. at 503 (discussing separation of powers and explaining that Speech of Debate Clause restricts "judicial power" in order to protect "legislative independence").

**Absolute Litigation Privilege:** Lawrence argues that the absolute litigation privilege does not apply because DOAR's work was part of "investigation and analysis" for the House Impeachment Managers and not "the adjudicatory function of the Senate," Opp. at 9, but the sole Pennsylvania state court decision on which she relies is inapposite.[2] That case makes clear that investigative work done in connection with "quasi-judicial proceedings" is privileged, and the reason the defendant's actions were not privileged in that case was that, unlike DOAR's conduct,

---

[1] Lawrence relies on three earlier cases in which Speech or Debate immunity was not afforded to Congressional and committee employees. *See* Opp. at 8 (citing *Powell v. McCormack*, 395 U.S. 486 (1969); *Dombrowsky v. Eastland*, 387 U.S. 82 (1967); and *Kilbourn v. Thompson*, 103 U.S. 168 (1881)). The Supreme Court distinguished each of those cases in *Gravel*, explaining that the employees had "engaged in illegal conduct that was not entitled to Speech or Debate Clause protection." 408 U.S. at 620. As the Supreme Court explained, if Members of Congress had engaged in the same illegal conduct, they would not have been immune either. *Id.* at 621.

[2] Lawrence's Opposition only cites cases from Pennsylvania, but makes no effort to explain why Pennsylvania law would apply to this dispute, rather than the law of either New York or Nevada, where the parties are domiciled. *See* Br. at 16 n.8; Opp. at 8-9. Regardless, DOAR's statements are privileged under any of those states' law. *See* Br. at 17 (citing New York and Nevada cases); *In re Pet. of Dwyer*, 406 A.2d 1355, 1358 (Pa. 1979) (recognizing quasi-judicial immunity).

that defendant's investigation had nothing to do with any adjudicative proceeding. *See Pollina v. Dishong*, 98 A.3d 613, 620, 622 (Pa. Super. 2014).

Lawrence misses the mark again when she incorrectly contends that the privilege is limited to parties, witnesses, attorneys, and judges. *See* Opp. at 8. DOAR, in its role assisting the House Impeachment Managers present their case, is protected by the absolute litigation privilege to the same extent as the Managers themselves. *See* Br. at 18 (citing New York and Nevada cases); *Nguyen Vu v. City of Phila.*, 2012 U.S. Dist. LEXIS 50697, at *19 (E.D. Pa. Apr. 11, 2012) ("[Q]uasi-judicial immunity is available to those who perform functions closely associated with the judicial process." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their opening brief, DOAR respectfully requests that the Court grant it motion to dismiss and dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(3), and/or 12(b)(6).

Dated: October 22, 2021      Respectfully submitted,

BALLARD SPAHR LLP

By:   */s/ Elizabeth Seidlin-Bernstein*
Elizabeth Seidlin-Bernstein
seidline@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Counsel for Defendant DOAR, Inc.*